DECISION AND JUDGMENT ENTRY
This is an appeal and cross-appeal from judgments of the Fulton County Court of Common Pleas that granted a motion to suppress all of the state's evidence, dismissed the indictment, and denied appellee's motion for a finding of contempt. For the reasons that follow, this court affirms in part and reverses in part.
Appellant/cross-appellee state of Ohio sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NO. I
 "THE TRIAL COURT ERRED IN SUPPRESSING ALL OF THE EVIDENCE PRESENTED BY APPELLANT AT TRIAL, BECAUSE THERE WAS NO DISCOVERY VIOLATION.
"ASSIGNMENT OF ERROR NO. II
 "EVEN IF THERE WAS A DISCOVERY VIOLATION, THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE IT FAILED TO IMPOSE THE LEAST SEVERE SANCTION THAT IS CONSISTENT WITH THE PURPOSE OF THE RULES OF DISCOVERY.
"ASSIGNMENT OF ERROR NO. III
 "THE TRIAL COURT ERRED IN DISMISSING THE INDICTMENT, BECAUSE ONCE APPELLANT APPEALED THE SUPPRESSION ORDER THE COURT LOST JURISDICTION TO DISPOSE OF THE CASE.
"ASSIGNMENT OF ERROR NO. IV
 "EVEN IF THE TRIAL COURT HAD JURISDICTION TO DISPOSE OF THE CASE, THE COURT ABUSED ITS DISCRETION BY DISMISSING THE INDICTMENT AS A SANCTION FOR ALLEGED DISCOVERY VIOLATIONS."
Appellee/cross-appellant sets forth the following assignment of error:
 "The Trial Court erred in dismissing the Motion Requesting Finding of Contempt Against Prosecutor for Disobeying Court Order."
The facts that are relevant to the issues raised on appeal are as follows. On July 15, 1998, appellee Mark Umpenhour was indicted on two counts of rape with force specifications in violation of R.C. 2907.02(A)(1)(b) and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) for acts he allegedly committed between March and December 1995 against his daughter, who was eight years old at the time. At the time of the alleged offenses, Umpenhour was living with his daughter and sons in his parents' home near Wauseon, Fulton County. Appellee's daughter later lived with relatives in Toledo and several other locations until 1998, when she and one of her brothers were placed in a foster home in Swanton. During the years that appellee's daughter lived in the Toledo area, Lucas County Children Services ("LCCS") became involved with the family.
Umpenhour filed numerous pre-trial motions requesting discovery pursuant to Crim.R. 16. On September 28, 1998, he filed a "MOTION FOR PRE-TRIAL INSPECTION OF DOCUMENTS" in which he asked the trial court to order LCCS to release to his attorney the records of all investigations conducted by the agency in connection with appellee and his children. The state responded that Umpenhour had not stated with particularity the grounds upon which his motion was made or shown a reasonable probability that the LCCS records contained material relevant to his defense. Umpenhour then filed a memorandum in support of his September 28 motion in which he asserted that an investigation had been initiated by LCCS after the dates of the alleged offenses are said to have occurred and that a review of any reports prepared after December 1995 would reveal that his daughter had not reported to LCCS staff that her father had sexually assaulted her. Umpenhour requested that the agency's records be submitted to the court for an in camera inspection.
On January 14, 1999, Umpenhour filed a motion in which he asserted that, if the trial court decided a full in camera
review of the LCCS records was not appropriate, the agency should be ordered to disclose "whether or not any independent evaluative procedure or examination, either medical, psychological, physiological, or otherwise, was made or relied upon with regard to the allegations in the instant cause."
On April 2, 1999, the state filed a memorandum in opposition to Umpenhour's most recent motion for discovery. The state asserted that Umpenhour's belief that the LCCS records did not contain any information regarding allegations of sexual abuse is not grounded on any demonstrable fact, and, therefore, Umpenhour is not entitled to an in camera inspection of the records. The state further asserted that Umpenhour's request for records of medical evaluations was not based on any demonstrable fact and asserted that it was "not aware of any reports of physical or mental examinations, or of scientific tests or experiments, made in connection with this case, which it must disclose pursuant to Crim.R. 16(B)(1)(d)."
On April 12, 1999, the trial court filed a judgment entry in which it overruled Umpenhour's request for access to the LCCS records. The trial court found that Umpenhour had failed to demonstrate with particularity some reasonable basis to believe the requested records would reveal any information favorable to the defense. As to the issue of the disclosure of any independent medical evaluation or testing which may have been relied upon by the prosecutor, the trial court stated that it expected the state to comply with all requirements of Crim.R. 16 and reveal all relevant information favorable to the defense.
On April 21, 1999, Umpenhour filed a renewed motion for a pre-trial in camera inspection of LCCS records relating to evaluations of his daughter and any discussions between the child and agency employees. Umpenhour argued that the possibility that the agency's records are privileged, pursuant to R.C. 2151.421(H) and R.C. 5153.17, is outweighed by the reasonable probability that the records contain material relevant to the defense. In a memorandum in response filed on April 30, 1999, the state asserted that it had provided Umpenhour with a copy of a "Case Contact Sheet" written by an LCCS employee after an interview with the child and that it was not aware of any other such records in connection with this case.
Umpenhour filed two more renewed motions for additional discovery on June 10, 1999, in which he asserted that the state had deliberately withheld discoverable materials and again asked for access to the LCCS files or, in the alternative, for the trial court to review the records in camera. On June 15, 1999, Umpenhour filed another motion for discovery in which he claimed the defense had uncovered information that his daughter had provided an LCCS caseworker with exculpatory information regarding the offenses charged in this case.
At a hearing held on June 15, 1999, the trial court considered Umpenhour's motions for release of the LCCS records and stated that it would attempt to obtain the records in question and review them in camera in order to determine whether they contain any exculpatory information. The trial court received 1,142 pages of documents and reports from LCCS on June 21, 1999, and reviewed them the following day. The trial court made the entire file available to defense counsel for inspection and review on June 22 and 23, 1999, subject to the restriction that no copies were to be made of any record. The file was made available to the state on June 24, 1999, subject to the same restriction.
On June 25, 1999, Umpenhour filed a "MOTION TO DISMISS BASED ON EGREGIOUS DENIAL OF DISCOVERY." In support of his motion, Umpenhour asserted that the exculpatory reports, inter views and other information and evidence contained in the LCCS file were available to the prosecutor at all times throughout the course of the case, that the file "is replete with exculpatory evidence that must be adequately explored," that the prosecutor failed in every respect to make available the exculpatory material, and that to force Umpenhour to go forward to trial without adequately allowing him an opportunity to review the newly uncovered issues would be highly prejudicial.
On June 28, 1999, the trial court filed a judgment entry in which it denied Umpenhour's motion to dismiss. The trial court stated it had failed to discern all of the exculpatory information defense counsel had alleged to be in the files and noted: "There is a lot of information detailing the particulars of an extremely dysfunctional family, but almost nothing of a significant nature touching on the issue of sexual abuse, and what there is, consists of a denial of sexual abuse, and no independent corroboration of any sexual abuse." The trial court continued: "In light of the Court's personal review of the attendant records, the Court's perception that very little of the information is relevant or exculpatory, but for the `denials,' and the availability of the records to each of the parties' attorneys, it appears to the Court that Defendant's Motion [to Dismiss] is not in the interest of justice, it should be over ruled, and the Court hereby so finds and so rules."
Trial commenced on June 28, 1999. At the conclusion of testimony on the first day, a hearing was held in chambers at which time the defense moved for dismissal on the basis that the prosecutor had deliberately withheld evidence he had received on or about March 30, 1999. Defense counsel asserted that he had been advised that the prosecutor had received "proof" that the child's mother had deliberately and falsely claimed that Umpenhour had molested his daughter ten years ago. The prosecutor responded that he had received a report from the child's mother stating that her daughter had been taken to the hospital when she was two years old. The doctor's diagnosis had been "possible sexual assault." The prosecutor asserted that the report was not exculpatory and not relevant to the charges before the court. The trial court stated that it would take the motion under advisement and have further hearing on the issue the following day.
On June 30, 1999, the defense filed another motion to dismiss based upon violations of DR 7-103(B), DR 1-102(A)(5) and Crim.R. 16, and a motion for a finding of contempt against the prosecutor for direct violations of the court's orders regarding disclosure of discovery. A hearing was held in chambers on June 30, 1999 and, after hearing further arguments, the trial court suppressed all of the state's evidence. The trial court stated that it would suspend further proceedings on the matter pending a ruling by this court on the suppression. After additional discussion as to the motion to dismiss and an appeal of the suppression order, the trial court instructed the parties and their attorneys to be present the following morning "because this thing is going to be resolved by nine o'clock tomorrow."
On the morning of July 1, 1999, the state filed a notice of appeal in this court from the trial court's order suppressing the state's evidence and filed a motion for a stay of proceedings in the trial court pending appeal. A hearing commenced at 9:00 a.m. on July 1, 1999, at which time the state argued that the trial court lacked jurisdiction to rule on appellee's motion to dismiss because an appeal had been filed. The trial court then ruled from the bench that the case would be dismissed on the following grounds: 1) the state's failure to provide the LCCS file, which the trial court found clearly contained a number of statements by Umpenhour's daughter denying having been sexually abused; 2) the discovery during the course of the court's voirdire of an agency nurse that there had been an allegation by the child of sexual molestation by another nurse; and 3) the state's failure to disclose the medical records pertaining to the child's earlier examinations. The trial court stated that there was "no way to rehabilitate this case," ruled that it did have jurisdiction to dismiss the case and that it would do so, and denied the motion for stay. On July 2, 1999, the trial court filed a judgment entry in which it dismissed Umpenhour's motion for a finding of contempt. On August 2, 1999, the state filed a notice of appeal of the trial court's dismissal of the case, and on August 6, 1999, Umpenhour filed a notice of cross-appeal of the trial court's denial of his motion requesting a finding of contempt against the prosecutor.
This case is now before this court on the state's two appeals, which have been consolidated, and on Umpenhour's cross-appeal.
In its first assignment of error, the state asserts that it did not violate the rules of discovery and that the trial court erred by suppressing all of the state's evidence. The state argues that it did not violate Crim.R. 16(B)(1)(d), because the hospital record in question was not made in connection with this particular case but arose from an examination of Umpenhour's daughter when she was two years old, five years prior to the dates cited in the instant allegations. The state further asserts that it did not violate Crim.R. 16(B)(1)(f), because the medical report did not constitute exculpatory evidence. The state argues that, if anything, the report would be inculpatory evidence of a prior bad act by Umpenhour because, contrary to ruling out sexual molestation, the physician who examined Umpenhour's daughter diagnosed "possible sexual assault."
Crim.R. 16(B)(1)(d) provides as follows:
 "Reports of examinations and tests. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney." [Emphasis added.]
Crim.R. 16(B)(1)(f) provides as follows:
 "Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment."
Upon careful consideration of the record of proceedings in this case and the law, we find that the prosecutor did not fail to provide discovery information required under Crim.R. 16(B)(1)(d) or (f). As to the hospital records from Umpenhour's daughter's examination in 1990, Crim.R. 16(B)(1)(d) requires the prosecuting attorney to permit the defendant to have access to such documents if they were "made in connection with the particular case." The documents in question clearly were the result of a physical examination made five years before the offenses in this case were alleged to have occurred and eight years before the indictment was filed. We find, therefore, that the prosecuting attorney did not violate Crim.R. 16(B)(1)(d) by not providing the defense with a copy of the hospital records when he acquired them.
As to the LCCS records, we also find that there was no violation of the rules of discovery in that regard. A thorough examination of the record shows that the defense filed several motions asking the trial court to order LCCS to release the file. On April 12, 1999, the trial court denied Umpenhour's motion, finding that the defense would have the opportunity to question Umpenhour's daughter at trial as to whether she had made any statements to LCCS caseworkers contradicting her recent claims against her father. After Umpenhour continued to assert that he was entitled to access to the LCCS files, ultimately filing a motion to dismiss, the trial court decided on June 15, 1999 to order LCCS to provide the files for an in camera review to determine whether they contained any exculpatory information. After reviewing the entire file, the trial court denied the motion to dismiss "in light of * * * the Court's perception that very little of the information is relevant or exculpatory * * * and the availability of the records to each of the parties' attorneys * * *." Of particular relevance to the resolution of this claimed error is the fact that the defense had access to the complete LCCS file for two days the week before trial. For the foregoing reasons, this court finds that the state did not violate Crim.R. 16(B)(1)(f). Accordingly, the state's first assignment of error is well-taken.
In its second assignment of error, the state asserts that the trial court abused its discretion by failing to impose the least severe sanction consistent with the purpose of the rules of discovery. Based upon our finding as to the state's first assignment of error that there were no discovery violations on the part of the prosecution, this court finds that Assignment of Error No. 2 is moot and need not be considered.
In its third assignment of error, the state asserts that the trial court did not have jurisdiction to dismiss the indictment after the prosecuting attorney filed a notice of appeal from the trial court's suppression order. The record reveals that the prosecutor filed a notice of appeal in this court at 8:39 a.m. on July 1, 1999. A hearing was held in the trial court on July 1 on Umpenhour's motion to dismiss. When the hearing commenced at 9:00 a.m., the trial court asked the prosecutor if a notice of appeal had been filed and the prosecutor replied that it had. The prosecutor asserted that the trial court did not have jurisdiction to dismiss the case at that time based on the appeal having been filed. The trial court then ruled, without explanation, that it did have jurisdiction and announced that it would dismiss the case.
Crim.R. 12(J) provides that the state may appeal as of right from a granting of a motion to suppress. Crim.R. 12(J) is to be strictly construed. State v. Newell (July 13, 1990), Lucas App. No. L-89-316, unreported, citing State v. Caltrider (1975),43 Ohio St.2d 157, paragraph one of the syllabus. After an appeal has been taken pursuant to Crim.R. 12(J), the general rule is that the trial court loses jurisdiction, State v. Watson
(1975), 48 Ohio App.2d 110, although the trial court does retain jurisdiction over issues that are not before the appeals court on appeal, such as collateral issues of contempt of court (Vavrina v.Greczanik (1974), 40 Ohio App.2d 129, 132 and footnote 4 therein). Based on the foregoing, this court finds that the trial court erred by dismissing the case after the state filed a notice of appeal. Accordingly, the state's third assignment of error is well-taken.
In its fourth assignment of error, the state asserts that even if the trial court had jurisdiction to dismiss the case, the court abused its discretion by doing so as a sanction for the alleged discovery violations. In light of our finding as to the state's third assignment of error, we find the fourth assignment of error moot.
We will now address Umpenhour's assignment of error as set forth on cross-appeal. Umpenhour asserts that the trial court erred in dismissing his motion requesting a finding of contempt against the prosecutor for disobeying the court's order to disclose all evidence that was relevant and favorable to the defense.
At the June 30, 1999 hearing, the trial court stated that it would defer ruling on the motion for a finding of con tempt "until the underlying case [is] disposed of," and continued all proceedings pending the anticipated interlocutory appeal from the suppression order. In its July 2, 1999 dismissal entry, however, the trial court dismissed the indictment as well as "all other pending motions."
Appellee asks that his motion requesting a finding of contempt against the prosecutor be reinstated or determined by this court on its merits. While we found under the state's third assignment of error that the trial court did not have jurisdiction to dismiss this case, the court arguably had jurisdiction over the collateral issue of contempt of court. Vavrina v.Greczanik, supra. The Supreme Court of Ohio has held, however, that "[t]here is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." Denovchek v. Bd. of TrumbullCty. Cmmrs. (1988), 36 Ohio St.3d 14 at syllabus. Umpenhour asserts that he was prejudiced by the withholding of clearly exculpatory and mitigatory information, which "caused him to be in jeopardy of presenting an adequate and fair defense." Umpenhour further asserts that he will be prejudiced if the issue of the prosecutor's actions is not continued and reviewed by the trial court. Upon review of the record, this court finds that Umpenhour has failed to set forth exactly how he was prejudiced by the dismissal of his motion. At the same time the trial court dismissed the motion, the court dismissed the entire case against Umpenhour. Further, in light of our findings that the state did not violate the rules of discovery, any argument that appellee was prejudiced is without merit. Accordingly, appellee's sole cross-assignment of error is not well-taken.
On consideration whereof, the judgment of the Fulton County Court of Common Pleas is reversed as to the order suppressing all of the state's evidence in this case and as to its dismissal of the indictment. The judgment dismissing appellee's motion for a finding of contempt is affirmed. This case is remanded to the trial court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ Richard W. Knepper, P.J.
Mark L. Pietrykowski, J. CONCURS.
James R. Sherck, J., concurs, in part and dissents, in part.